No. 66690.—Clary Corp. et al. *v.* United States, protests 59/5584, etc. (Los Angeles).

FORD, Judge: The protests listed in schedule "A," attached hereto, which were consolidated for trial, relate to certain merchandise classified by the collector under the provision for adding machines having an electric motor as an essential feature within paragraph 353 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and assessed with duty at 12½ per centum or 13 per centum ad valorem, depending upon the date of importation.

Plaintiffs do not dispute that the machines are articles having as an essential feature an electrical element or device, but contend that the merchandise is more accurately described within said paragraph 353, as modified by the sixth protocol, *supra*, as calculating machines specially constructed for multiplying and dividing, and having an electric motor as an essential feature. The rate of duty imposed by this provision of paragraph 353 is 11½, 11, or 10½ per centum ad valorem, depending upon the date of importation.

Paragraph 353, as modified by T.D. 54108, *supra*, provides as follows:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

| | | |
|---|---|---|
| Adding machines having an electric motor as an essential feature_____ 13% ad val. | 12½% ad val. | |
| Calculating machines specially constructed for multiplying and dividing, and having an electric motor as an essential feature_____ 11½% ad val. | 11% ad val. | 10½% ad val. |

Accordingly, the issue presented is whether the imported merchandise is more particularly classifiable as calculating machines specially constructed for multiplying and dividing than simply as adding machines. In determining the issue, it appears two questions must be answered in the affirmative if the plaintiffs' contention is to prevail: (1) Is the merchandise a calculating machine? and (2) is it specially constructed to multiply and divide within the meaning of paragraph 353, *supra*?

The only testimony regarding the operation of the machines was given by Harvey H. Rich, president of the Elite Office Equipment Co., which sells adding and calculating machines, and owner of Wholesale Business Machines, which distributes the Totalia adding and calculating machines in certain areas of

this country. The witness has been handling adding and calculating machines for some 15 years, having sold and repaired them during that time. For the past 5 years, he has become familiar with the operations of the product in question by studying and selling it.

Plaintiffs also called Fred B. Bonilla who, for 5 years, has been administrative director of the Clary Corp., which manufactures adding machines and cash registers and imports and distributes calculating machines. His firm has sold and distributed the machine in question for 5 years.

Plaintiffs' exhibit 1 consists of a pictorial representation and keyboard of the imported machine, labeled "Clary Model 401." Plaintiffs' exhibit 3 is identified as an operator's manual, containing an illustration of a "Totalia" machine. Mr. Rich testified that he sold the machine illustrated in exhibit 1 under both the "Totalia" and the "Clary Model 401" labels. The merchandise described on the invoices as "Printing Calculators Model No. 2361" was identified by Mr. Bonilla as being exactly identical to the "Clary Model 401" (R. 6), the only distinction being in the labels (R. 10). The 2361, which is sold by the manufacturer under his own label of "Totalia" (R. 10), has the Clary label attached to the model when imported by the Clary Corp. (R. 7).

In demonstrating the operation of the machine, upon cross-examination, Mr. Rich caused it to multiply 12 times 12 by depressing the number 1 and number 2 keys twice, the X button, and the equal button, and then the machine automatically arrived at the product. Replying to a question by Government counsel, the witness testified that in order to reach the result obtained, the machine did not add 12 times.

In demonstrating the division of 486 by 13, the witness entered 486 into the machine, depressed the X key, entered the reciprocal of 13, which was obtained from a table of reciprocals in the operator's manual, and hit the equal key to arrive at the answer.

The witness also stated that no special training was needed to operate the machine, which could be used by an unskilled operator.

The automatism of the multiplication and division functions is to be considered with the following information contained in The New International Encyclopaedia, volume 4, second edition, at page 308:

**Multiplying and Dividing Machines** may be separated into two classes, depending upon the principle by which the mechanism obtains results, i.e., whether the product is obtained as the result of repeated additions or as a direct multiplication. * * *

[Machines of the first group] can perform multiplication only by repeated addition, and division only by repeated subtraction. We should do the same thing with pencil if it were not for the fact that we have learned the multiplication table. * * *

It would appear that the ease of operation and the rapidity of the calculating procedures of the machine warrant the inclusion of it within the group of machines which operates automatically, rather than by repeated processes. Accordingly, it properly can be considered as a calculating machine which can be expeditiously used for multiplying and dividing.

This designation as a calculating machine is clearly supported by the decision in *Plus Computing Machines, Inc.* v. *United States*, 44 C.C.P.A. (Customs) 160, C.A.D. 655, which held the merchandise therein to be a calculating machine.

Our second consideration, as indicated above, is directed toward determining whether the machine is specially constructed for the purpose of multiplication and division. In interpreting the meaning of "specially constructed," the court, in the *Plus* case, *supra*, stated: "In ordinary usage the statement that an

article is specially constructed for a particular purpose means merely that it includes particular features which adapt it for that purpose."

Applying this test, i.e., whether the machine in question includes features which are particularly adapted for the purposes of multiplication and division, it is our opinion that the machines under consideration were specially constructed for multiplying and dividing. This is borne out by the fact that the imported machine contained features not found in those machines sold as adding machines. The mechanical structure of the machine is such that it will multiply by the entry of a multiplier, which will automatically produce a product without the necessity of repeated additions. The machine also possesses a memory section which permits, by merely pressing the multiplication key, a remultiplication of a previously added total, without reentry of this total into the keyboard. The machine also has an adjustable decimal point, which is an important factor in calculations, such as multiplication and division. In addition to the foregoing, the machine can automatically divide by 100 by moving a lever located in the front of the machine to the right, which operates a special mechanism for that purpose. Finally, the speed and ease of operation of the multiplication and division functions clearly indicate the presence of automatic processes specially constructed and included for these purposes.

In view of the foregoing and following the principles set forth in the *Plus* case, *supra*, in determining whether an article is specially constructed to multiply and divide, we are of the opinion that the imported machines are properly classifiable as calculating machines specially constructed for multiplying and dividing, and having an electric motor as an essential feature, within paragraph 353 of the Tariff Act of 1930, as modified, *supra*. Accordingly, the imported merchandise is held to be properly dutiable at the rate of 11½ per centum, 11 per centum, or 10½ per centum ad valorem, under the provisions of paragraph 353 of the Tariff Act of 1930, as modified, *supra*, the rate being dependent upon the date of importation.

Judgment will be entered in accordance with this decision.